My name is John Klein and I represent the appellant, Bruce Garelick. We're here on Mr. Garelick's motion for release pending appeal. The only disputed question on the motion is whether Mr. Garelick has asserted a substantial question that, if decided in his favor, is likely to produce a new trial. In his brief, the opening brief has been filed, and in his motion, Mr. Garelick asserts three such questions. I'd like to touch on two of them in my time today. The first question I'd like to touch on is the cross-examination of Mr. Garelick's character witness, Carl de Young. In United States v. Oschatz, this case, this court held very clearly that cross-examination of character witnesses by the government through guilt-assuming questions is forbidden. And it made clear, although it didn't reverse in Oschatz itself, it made clear that in future cases, if the government crossed that line, reversals could well occur. The government, and by the way, the court reiterated the prescription in Oschatz in later cases. One is called U.S. v. Passione. One is called U.S. v. Russo. The government here violated the rule in Oschatz very clearly on cross-examination of the character witness. The government asked several questions that took as true key allegations in the case. And then the final question was— Well, their argument is they weren't hypothetically assuming guilt. They were questions about undisputed facts. The questions were about whether or not he signed an NDA, whether or not he purchased shares as a director, whether he had access to inside information as a board member. And they cited his testimony. Those things were all undisputed. So they were just questioning a character witness regarding undisputed facts and whether that witness was aware of it or not. So that's not quite what happened in those other cases. Well, in the other cases, too, the government asked about allegations in the case. And one of the— If you knew he distributed jobs, would that change your opinion of him? That's a guilt-assuming question. These are just facts. They're just establishing the scope of the character witness's understanding of facts related to the case. One of those questions—first of all, Mr. Gerlich hadn't testified when the— I know, but all those things that they questioned about were undisputed. There was no dispute that he signed the NDA, right? There was no dispute about that. There was a dispute that he recommended to Mr. Schwarzman that he buy stock. Mr. Gerlich's testimony was that he reminded Mr. Schwarzman of a preexisting agreement they had reached that he would buy stock at a certain point. But they didn't ask the character witness about that. I'm sorry? They didn't ask the character witness about that. They asked the character witness about these undisputed facts. No, the character witness was asked that very question, Your Honor. Which one? The third question about recommending. And that was disputed? That was disputed. The question was— Was it disputed when he did it or whether he did it? Whether he recommended to— At all, under any set of circumstances.  I thought a minute ago you said it was that he did speak to him about it, but not during the period, but it was a prior period. Mr. Gerlich testified that he, in the key e-mail that the government highlighted at trial, Mr. Gerlich testified that he reminded Mr. Schwarzman that he was going to—that Mr. Schwarzman had already planned to buy stock. Mr. Gerlich was Mr. Schwarzman's financial advisor. I understand. But let me go to the last question. The last question that the character witness was asked was, you would agree with me that someone who commits insider trading is not being truthful, right? That is as clear an example of a guilt-assuming hypothetical question as you could ever have. The witness answered— No, not quite. It's close, but it's not quite. It would be, if you were to learn that Mr. Gerlich committed insider trading, knowingly, you know, committed insider trading, would that change your opinion of him? Right? Would you consider that, you know, untruthful behavior? It didn't reference him. They were talking about, generically, if someone commits that, is that truthfulness or not, right? But it's only going to be relevant to the witness's assessment of Mr. Gerlich's character if we assume that Mr. Gerlich did that. You know, this Court has said several times that it's not just the letter of O'Shatt's that counts. It's the spirit as well. That was said in, I believe, in Passione. It was certainly said in Russo. And if that question doesn't violate— You think your client should get a new trial because they asked whether if someone in general commits insider trading, whether that's truthful or not, there should be a new trial? I do. Because of that question. This character witness was critical to this case. He was critical to Mr. Gerlich's defense. And yes is the short answer. I believe he should get a new trial. All right. I'll give you 30 seconds on the second issue. You said you had one more question. 30 seconds. I ate up all your time there, so. I understand. Mr. Gerlich sought to introduce an e-mail that he wrote during the alleged criminal conduct, October 19th, 2021, to his compliance officer saying, I traded for the last time on September 23rd. I now believe that I'm in possession or potentially in possession of material information, and so I am not trading anymore. That e-mail was excluded as hearsay and also at least in part under Rule 403. The e-mail was relevant and exculpatory regardless of whether it was true. It was the fact that he made disclosure to his compliance officer, who was also the general counsel of his company, before he ever sold the stock. You have to prove that's true. If he didn't discuss that with the compliance officer, it has no relevance to his state of mind or to anything else. You have to prove the truth of that, that such a discussion took place, right? Even if everything in that e-mail was false, and it wasn't, by the way, but even if everything in that e-mail was false, the disclosure, the fact of the disclosure is exculpatory. The government insisted throughout. May I have just a couple more, a few more seconds? Go ahead. The government insisted throughout that Mr. Gerlich was trying to hide what he was doing, that he was concealing these trades. Here he is right in the middle of the alleged criminal conduct. It was after the trades. I'm sorry? It was after the trades. It wasn't in the middle. It was after. It was before the merger, right? It was after the purchase but before the sale. And before the merger. The trades were over. I'm sorry? The trades were done, right? He had purchased the stock. He had not sold the stock. No, and he also recommended that Schwarzman were confirmed that they'd already talked about it, whatever you want to put it. He'd already had the conversation with Schwarzman. He had had the conversation. As of October 19th, yes, he had had the e-mail exchange with Schwarzman. All right. I think we understand that argument. Thank you. Thank you. Why don't you discuss the question, if you would, as soon as you can, as soon as you make any preliminary remarks about the question of the, you know. Well, take the questions in the order in which your adversary dealt with them. Of course, Judge Walker, and good morning, and may it please the Court, Matt Shahabi, in appearing for the government. I represented the government in the court below as well. Taking the questions in the order that my friend on the other side took them, I'll start with a cross-examination of the character witness. As Judge Bianco pointed out, the majority of the questions of the character witness were not guilt-assuming in any way. They simply tested the character witness's knowledge of relevant facts in the case so that the jury could assess the credibility of a character witness's opinion. Can you make an argument to the effect that a generic question about insider trading, if you knew that somebody was engaged in insider trading, would that affect your evaluation of his character? Coupled with the prior statements of fact relating to this case leaves a very little gap between that and a direct, inculpatory question. I understand the force of your question, Judge Walker, but I would say that does not violate the OSHATS rule. In OSHATS, the court was particularly concerned with the appearance that a prosecutor asking questions assuming the guilt of the defendant did you know the defendant dealt drugs or committed tax fraud, in a sense, vouches the government's good faith to ask the question. That question comes dangerously close. It was phrased generically as opposed to the defendant, but as Judge Walker points out, the jury could easily understand the prosecutor is implying, if you were to learn that the defendant did this. How can I go so far without violating? It's one thing to ask certain factual questions and ask the character witness, are they aware of those factual questions? As I indicated to your adversary, I don't think that runs afoul of OSHATS, but a generic question about the crime itself comes dangerously close. I hear the court's concern. I'd push back and say it doesn't because it's a different targeted question in the purpose. The purpose isn't to suggest to the jury that this defendant is guilty. The purpose is to test the character witness's credibility. If the character witness believed, for example, that insider trading generally shouldn't be prohibited and wasn't untruthful behavior, answering the question, no, I don't believe someone who commits insider trading is being untruthful, sheds light on that witness's credibility so that the jury can assess the value of his character testimony without assuming the guilt of the defendant in front of the jury and violating the OSHATS rule. And so I think you could say that as a question in OSHATS. Certainly, if you ask somebody, you know, if you were to learn that someone distributed drugs, would that change your opinion? You know, you could make the same argument you're making now. I'm not asking that question to have them assume that the defendant is guilty. I'm just testing the parameters of what this witness thinks goes to character or not going to character. But we've clearly said if you're doing that in a way that assumes guilt, even if the purpose is to discredit the character witness, it's no good. So, you know, we haven't had cases that has had that particular generic question unless you can point one to me. But it comes close to the line. I understand, Your Honor. I think as the court acknowledges, it wasn't discussed in that context in OSHATS. And I think as other circuits have pointed out, like the Third Circuit and Kellogg, cross-examination is permitted to test the credibility of the character witness. There was no objection lodged to that particular question. So any review by this Court at the merit stage would be for plain error. And given that standard, given the lack of any authority addressing this particular hypothetical third-person guilt-assuming hypothetical. Can you spend one minute on the e-mail? Yes, Your Honor. So turning to the exclusion of Defense Exhibit 37, Judge Lyman correctly excluded the exhibit both under hearsay and Rule 403 grounds. And I think the most important point is that the defendant was permitted to testify before the jury to the fact of the conversation that he had with his compliance officer. So even independent of the e-mail, on the stand, and this was at transcript 1282 to 1283, Gorelick was permitted to say, I spoke to my compliance officer shortly before the merger and told him I was restricting himself. That was admissible of his then-existing state of mind at that point, and Judge Lyman permitted it, and the government did not object to it. What was excluded was the e-mail itself, which clearly contained backwards-looking hearsay statements about his past actions and past state of mind, and any probative value it may have had was cumulative under 403, given that he was permitted to testify to the admissible facts and given the improper purpose of the hearsay contained in the self-serving e-mail. All right. Thank you. Thank you both for reserved decision. Have a good day.